# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SONJA R. NICLEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 3:12-cv-416 |
| | ) |
| CACH, LLC, | ) |
| | ) |
| | )     Jury Trial Demanded |
|     Defendant. | ) |

## COMPLAINT

## INTRODUCTION

1. This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), in its illegal efforts to collect a consumer debt from Plaintiff.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

3. Venue is proper in this District because the acts and transactions occurred here,

[1]

Plaintiff resides here, and Defendant transacts business here.

## PARTIES

4. Plaintiff, Sonja Nicley, (hereinafter referred to as "Plaintiff" and/or "Ms. Nicley") is a resident of this State, District and Division who is authorized by law to bring this action.

5. Defendant, CACH, LLC (hereinafter referred to as "Defendant" and/or "CACH") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and a for-profit limited liability company organized in Colorado that maintains The Corporation Company, 1675 Broadway, Suite 1200, Denver, CO 80202, as its registered agent for service of process.

6. Other defendants may be discovered in the course of litigation, and Plaintiff respectfully prays that the Court will permit the addition of later discovered parties upon motion.

## FACTS

7. CACH uses mail in its business.

8. CACH uses telephone communications in its business.

9. The primary purpose of CACH's business is the collection of debts.

10. CACH is engaged in the business of purchasing charged-off consumer debts and attempting to collect them from consumers.

11. CACH regularly collects or attempts to collect debts owed, or due, or asserted to be owed or due to another.

12. CACH has alleged that Ms. Nicley incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of

[2]

the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a credit card bill allegedly originally owed to or serviced by Bank of America.

13. The alleged obligation of Ms. Nicley arose out of a transaction within which the money, property, insurance or services that were the subject of the transaction were primarily for personal, family, or household purposes, and the obligation is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

14. Sometime prior to February 27, 2012, Plaintiff's debt was sold or otherwise transferred to Defendant for collection from Plaintiff, when thereafter Plaintiff received collection communications and was subjected to collection acts from Defendant, all in an attempt to collect this debt.

15. Counsel for CACH, Buffaloe & Associates, PLC, sent Ms. Nicley a letter dated February 27, 2012, asserting Ms. Nicley owed them the "Original Claim Amount: $2,999.40 Plus Attorney Fees and Contract Interest (IF APPLICABLE TO THE ACCOUNT) YOU MUST CONTACT THIS OFFICE FOR A COMPLETE PAYOFF BALANCE." (see attached Exhibit A; emphasis included in original).

16. On May 2, 2012, a Civil Warrant was issued in the Knox County General Sessions Court and docketed as number 10151H by Buffaloe & Associates, PLC, who were acting on behalf of their client, CACH, collecting on the same account previously mentioned and claiming the outstanding "principal amount [owed] of $2,999.40, plus court cost in the amount of $133.00, and service of process fees in the amount of $25.00." (see attached Exhibit B).

17. Attached to the May 2, 2012 Civil Warrant was a document titled "AFFIDAVIT

OF CLAIM" which, in direct contradiction to the face of the summons, asserted that as of April 2, 2012, "There is now due and payable from the Defendant(s) the sum of __$2,999.40__ plus interest calculated at the statutory rate of ___10%___ per annum, from __February 17, 2012__ plus costs and reasonable attorney fees as permitted by applicable law or contract." (see attached Exhibit C; underlining included in original).

    18.    CACH has never provided a copy of the original contract signed by Ms. Nicley to determine the applicable rate of interest or whether there are any accruing fees.

    19.    CACH violated the Fair Debt Collection Practices Act in its communications with Ms. Nicley.

    20.    Ms. Nicley has complied with all conditions precedent to bring this action.

## CAUSES OF ACTION

## FIRST VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT: THE USE OF FALSE, DECEPTIVE, OR MISLEADING REPRESENTATIONS IN ATTEMPT TO COLLECT A DEBT

    21.    The acts of Defendant constitute violations of the Fair Debt Collection Practices Act. Defendant's violations of the FDCPA include, but are not limited to, the following:

- The use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e; and

- The use of false, deceptive, or misleading representations in connection with the character, amount, or legal status of the alleged debt, in violation of 15 U.S.C. §1692e(2).

[ 4 ]

22. CACH demands conflicting amounts from the February 27, 2012 letter from Buffaloe & Associates, PLC that demanded $2,999.40 plus attorney fees and contract interest; to the Affidavit dated April 2, 2012 that demanded $2,999.40 plus interest at the statutory rate of 10% from February 17, 2012 plus costs and attorney fees; and finally to the Summons/Warrant issued on May 2, 2012 that only demanded $2,999.40 plus court cost and service of process fees.

23. In the Affidavit CACH's representative, Edna D. Cruz, certified that after her review of "the books and records of [CACH]", "[t]he business records furnished to [CACH] show that [Ms. Nicley] opened a credit card account with Bank of America, N.A., and "[t]here is now due and payable from [Ms. Nicley] the sum of $2,999.40 plus interest calculated at a statutory rate of 10% per annum, from February 17, 2012 plus costs and reasonable attorney fees as permitted by applicable law or contract." (see Exhibit B).

24. Ms. Nicley asserts the contractual rate of interest on her Bank of America account was never ten percent (10%).

25. Edna D. Cruz never reviewed the contract between Ms. Nicley and Bank of America to determine if attorney fees are permitted.

26. If Edna D. Cruz is correct in that the balance was accruing interest at a rate of 10% per annum, then the balance should have increased between the February 27, 2012 letter, the date of the Affidavit being signed on April 2, 2012, and the date of the Summons/Warrant being issued, May 2, 2012.

27. Ms. Nicley is confused as to whether the balance owed was just the amount sought on the Summons/Warrant, $2,999.40 plus court cost and service of process fees, or also included the amount demanded a month earlier in the Affidavit, $2,999.40 plus interest of 10%

[5]

since February 17, 2012 along with attorney fees and costs.

28. Further confusion is created by Buffaloe & Associates, PLC's February 27, 2012 demand for $2,999.40 plus attorney fees and "Contract Interest" as Ms. Nicley is uncertain about whether the account is accruing interest at the contract rate or the "statutory rate" of 10% from February 17, 2012, as demanded in the Affidavit. (see Exhibit A and Exhibit C).

29. The Affidavit is in direct contradiction with the February 27, 2012 letter from Buffaloe and Associates, PLC since the Affidavit says the "statutory rate" of 10% interest has been accruing since February 17, 2012 and the Buffaloe & Associates, PLC letter demands "Contract Interest" just ten days later. *Id.*

30. Based on the foregoing contradictory and duplicitous demands of two separate rates of interest, Ms. Nicley believes that CACH was likely charging her two separate rates of interest on the same account, and at the same time.

31. Ms. Nicley asserts that if Edna D. Cruz really did review the account records, as she claims under oath to have done, then she would not have to demand attorney fees "as permitted by applicable law or contract" as the original contract would certainly tell whether attorney fees applied to this particular account. (see Exhibit C).

32. Ms. Nicley asserts that the differing demands by CACH is an attempt to keep her confused as to the amount owed so that if she were to make payments on this account, she would never know the actual amount owed and instead would keep paying indefinitely on fees, interest, or other charges that were never legally owed by her.

33. By attempting to collect varying unknown and unauthorized interest amounts through false and deceptive communications, CACH has confused Ms. Nicley as to what amount

[ 6 ]

of money she owes on this account and the legal status of the account.

## SECOND VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

34. The acts of Defendant constitute violations of the Fair Debt Collection Practices Act. Defendant's violations of the FDCPA also include, but are not limited to, the following:

- The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. §1692f(1).

35. Without a written contract signed by Ms. Nicley, CACH may not recover attorney's fees or a contract rate of interest on the underlying debt. ***Holcomb v. Cagle*, 277 S.W.3d 393, 397-98 (Tenn. App. 2008) (perm. app. den. Sup. Ct., December 15, 2008**)).

36. CACH sought $2,999.40 plus attorney fees and contract interest in its February 27, 2012 letter by Buffaloe & Associates, PLC. CACH sought $2,999.40 plus 10% interest since February 17, 2012, attorney fees and costs in its April 2, 2012 Affidavit. It asserted interest of ten percent (10%) was accruing despite applying a wholly different rate of interest in its February 27, 2012 letter and never having a contract to prove the correct rate of interest, which assuredly is not ten percent (10%)

37. The amounts sought by CACH in their various communications include two separate rates of interest, various fees, and attorney fees not expressly authorized by the agreement creating the debt or permitted by law, and thus were in direct violation of 15 U.S.C. §

[ 7 ]

Case 3:12-cv-00416   Document 1   Filed 08/07/12   Page 7 of 11   PageID #: 7

1692f(1).

38.     CACH is intentionally false, deceptive and misleading in representing that it is entitled to interest at a "statutory rate" of ten percent (10%) accruing from an arbitrary date of February 17, 2012.  While CACH may be attempting to apply the post-judgment interest rate of ten percent (10%) as provided by Tennessee Code Annotated § 47-14-121, it is incorrectly collecting the post-judgment rate of interest prior to the Civil Warrant being issued and the matter being heard by the court, and thus is demanding amounts not expressly authorized by agreement or provided by law.

## THIRD VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT: THE USE OF HARRASMENT OR ABUSE IN ATTEMPT TO COLLECT A DEBT

39.     The acts of Defendant constitute additional violations of the Fair Debt Collection Practices Act.  Defendant's violations of the FDCPA also include, but are not limited to, the following:

- Engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d.

40.     By utilizing the State of Tennessee court system to collect on a debt which they had no documentation to support, CACH used a deceptive means in collection with the collection of this debt.

41.     Prior to signing the Affidavit, Edna D. Cruz did not review records of the originator of the debt to determine if the contract, upon which CACH allegedly relied to file the

[ 8 ]

collection lawsuit, existed and if so, whether the amount Ms. Nicley allegedly owed was correct, because CACH followed their business model of not obtaining records of the originator of the debt that would have allowed Edna D. Cruz to do so.

42. Without records of the originator of the debt available for Edna D. Cruz to review prior to signing the sworn Affidavit, and without Edna D. Cruz taking the time to attempt to correctly calculate the amount owed by Plaintiff based on the terms of the contract on which CACH allegedly relied to file the collection lawsuit (as required by Tennessee state law for a sworn account) it was not possible for Edna D. Cruz to have the personal knowledge required to truthfully make a sworn affidavit as to the correctness of the amount owed, if any, by Ms. Nicley.

43. Form affidavits, such as the one filed in the lawsuit against Ms. Nicley, are generated automatically by a computer owned by CACH upon request, and routinely provided to Edna D. Cruz and other employees and/or agents of CACH who engage in robo-signing hundreds, if not thousands, of affidavits each day without the personal knowledge required to make a sworn affidavit as to the correctness of the amount owed, as required by Tennessee state law.

44. The intentional use by CACH of a form affidavit, which contains representations that are obviously fraudulent and in violation of state law, in Ms. Nicley's collection lawsuit demonstrates that CACH has used false, deceptive, and misleading representations or means in connection with the collection of the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and the use of unfair and unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f, the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d.

[ 9 ]

Case 3:12-cv-00416   Document 1   Filed 08/07/12   Page 9 of 11   PageID #: 9

# FOURTH VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT: THE USE OF FALSE, DECEPTIVE, OR MISLEADING REPRESENTATIONS IN ATTEMPT TO COLLECT A DEBT

45. The acts of Defendant constitute additional violations of the Fair Debt Collection Practices Act. Defendant's violations of the FDCPA also include, but are not limited to, the following:

- The threatening to take any action that cannot legally be taken or that is not intended to be taken, in violation of 15 U.S.C. §1692e(5).

46. CACH is not licensed as a collection agency by the Collection Service Board for the Tennessee State Department of Commerce and Insurance, and thus is not legally able to collect debts in the State of Tennessee.

47. CACH hired a law firm to collect from Ms. Nicley and even sued Ms. Nicley, all while CACH was aware that Ms. Nicley is a resident of the State of Tennessee. Therefore, CACH is threatening, and taking, an action that cannot legally be taken.

48. As a result of Defendant's actions, Plaintiff is entitled to an award of actual damages, statutory damages, as well as an award of costs and attorney fees.

# TRIAL BY JURY

49. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed.R.Civ.P. 38.

[10]

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT JUDGMENT BE ENTERED AGAINST DEFENDANT AND IN FAVOR OF PLAINTIFF AS FOLLOWS:

a) That Plaintiff be awarded actual damages pursuant to 15 U.S.C. § 1692k(a)(1) in an amount to be determined at a trial by a jury;

b) That Plaintiff be awarded statutory damages pursuant to 15 U.S.C. §1692k(a)(2);

c) That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to 15 U.S.C. §1692k(a)(3);

d) That the Court declare all defenses raised by Defendant to be insufficient; and

e) That the Court grant such further and additional relief as is just in the circumstances.

Respectfully submitted on this, the 7th day of August, 2012.

> */s/ Justin A. Brackett*
> Justin A. Brackett, BPR #024326
> Attorney for Plaintiff
> 1104 Merchants Drive, Suite 101
> Knoxville, TN 37912
> (865) 688-0868
> consumerbk@comcast.net

[11]